IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARRYL R. DUNCAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-0087-MJR-SCW |
| ) | |
| THOMAS SPILLER, ) | |
| JEFF MILLER, ) | |
| ERIC WANGLER, ) | |
| DONALD WANACK, ) | |
| JARROD SELBY, ) | |
| MICHAEL OBERTINI, and ) | |
| JOHN WOLFE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

On January 28, 2015, Plaintiff Daryl Duncan, then a prisoner incarcerated at the Pinckneyville Correctional Center, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. His complaint named a whopping thirty-nine defendants, alleging that some of them assaulted him at Pinckneyville, that some denied him medical care at the prison, and that others imposed barriers to his release. Duncan's complaint was screened pursuant to 28 U.S.C. § 1915A and a great many of his medical- and barrier-type claims were dismissed without prejudice, largely because they had nothing to do with his assault claims and therefore violated the joinder rule. *See* FED. R. CIV. P. 18(a). His assault claims proceeded through screening, but only because, at threshold, the Court was of the view that Duncan had alleged that he was in danger at the time he filed his complaint. Federal statute gives indigent prisoners the privilege of proceeding

1

with a lawsuit without paying the full filing fee up front, but largely withdraws that subsidy from prisoners who have a history of frivolous litigation—those prisoners can only get the subsidy if they are in serious danger when they filed their complaint. **28 U.S.C. § 1915;** *Lewis v. Sullivan***, 279 F.3d 526, 527 (7th Cir. 2002).** Duncan had a history of frivolous litigation, *see Duncan v. Quin***, No. 14-cv-00604, 2014 WL 2522719, at \*3 (S.D. Ill. June 4, 2014)**, so he was subject to the three-strikes bar (and its exception).

The defendants in this case, at least the ones that survived threshold review, believed that Duncan was being deceptive and wasn't actually in danger when he filed his complaint. On September 1, 2015, they filed a motion to revoke Duncan's pauper status. The magistrate judge held a hearing on that motion and then issued a report and recommendation, advising that the motion be granted. Based on the evidence presented at the hearing, the magistrate was of the view that Duncan was a liar who was attempting to trump up his claims to get around the pauper barrier. The magistrate judge also provided a recommendation on Duncan's outstanding requests for injunctive relief, advising that they be denied because they sought relief on claims that had nothing to do with the ones made in his complaint. Duncan has filed objections to the magistrate judge's report, and the report is now ripe for review.

While a pauper determination is not the right vehicle to assess the merits of the entire suit, a defendant may challenge the plaintiff's claims of danger before the merits of a case are finished, and the Court can conduct a hearing on that challenge to determine whether the plaintiff was truly in danger when he filed his complaint and whether his pauper grant should hold up. *Taylor v. Watkins***, 623 F.3d 483, 485 (7th**

**Cir. 2010).** Allowing for that kind of challenge makes good sense if the three-strikes barrier is to have any force—if there was no way to mount a challenge to a grant of pauper status for struck-out prisoners, a prisoner could inundate the courts with frivolous claims, rack up strikes, and then lie about being in danger so as to avoid the three-strikes barrier, effectively rendering the barrier a dead letter. *Id.* If the evidence at the revocation hearing shows that there was a "real and proximate" danger when the complaint was filed, pauper status will be upheld; if not, pauper status will be revoked, and the prisoner will need to pay the Court's filing fee to proceed with his case. *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003).

The Court has reviewed the record and is of the view that the magistrate judge was right to conclude that Duncan lied about being in danger when he filed his complaint. Duncan mentioned a number of officer assaults at Pinckneyville in his original complaint, all leading the Court to provisionally rule that he was in danger and could proceed as a pauper despite his litigation history. Duncan said that Officer Miller broke his wrist on August 2, 2014; that Officers Miller, Wanack, and Wangler drug him to his cell and attacked him on September 29, 2014; that Officer Wangler kicked him on October 21, 2014; that Officer Miller pushed, elbowed, and threatened to kill him on October 29, 2014; that Officer Selby pushed him into a wall on December 2, 2014; that Officers Selby and Obertini pushed him into a wall and hit him in the face on December 16, 2014; and that Officer Wolfe put his foot on Duncan's arm and stopped him from taking his medication on January 8, 2015. A motion filed by Duncan on February 9, 2015 documented more assaults in that same month. The motion was vague, but

Duncan clarified at the pauper hearing that Miller pushed him on February 5th, that Wanack hit him on February 6th, and that Wangler threatened him on February 7th.

The record and the testimony at the hearing show that Duncan is dissembling about these attacks, and thus wasn't in serious danger when his complaint was filed. Take the alleged assault on August 2, 2014, when Officer Miller allegedly dragged Duncan by his handcuffs and broke his wrist. The complaint and many other filings after it emphatically said that Miller broke Duncan's wrist, but the medical evidence decisively shows that Miller's wrist was never broken, that he was told as much by medical staff before he filed his complaint, and that he had the medical records showing that his wrist was not fractured early in this case, before he continued to state in filings that his wrist was fractured during the attack. If those lies weren't enough, the record also shows that Miller wasn't even working at the prison on the day in question.

Duncan didn't just lie about the events of August 2014—there is evidence showing that he dissembled about the September 29, 2014 assault as well. Duncan said that he was assaulted by Miller, Wangler, and Wanack on that date while they were escorting him them through the prison, but the grievance Duncan submitted one day later made no mention of an assault, referenced Wangler alone in the statement of what happened, and alleged only that Duncan was threatened, denied medical care, and denied a disability accommodation. Duncan didn't mention the assault at his disciplinary hearing on October 12, 2014 either, nor is there any medical record documenting an injury from the assault. The absence of a medical record might be understandable from a prisoner who was afraid of further attacks by guards, but that

4

explanation loses force with a prisoner like Duncan—the record shows that he isn't shy about making his injuries known to medical staff at the prison. All of these points cast doubt on Duncan's allegations of danger, and that doubt is amplified by the fact that Wangler wasn't even assigned to escort duties at the prison until November 2014.

There are more inconsistencies between Duncan's allegations of danger and the record. Duncan accused Officer Obertini of assaulting him with Officer Selby on December 16, 2014, but Obertini was not even physically assigned to Pinckneyville's prison facility on that date, and was completely off work from his nearby assignment at the DuQuoin Impact Incarceration Program in any event. Duncan testified at the pauper hearing that Officer Wanack hit or threatened him on February 6, 2014, but the evidence shows that Wanack wasn't at work that day, either. Duncan said in his complaint that Officer Wangler opened his cell door and hit him for no reason on October 21, 2014, but he offered no testimony on this incident when invited to at the pauper hearing. Duncan said that Wangler hit him on February 9, 2015, but stated at the hearing that Wangler merely threatened him on that date. There are many more inconsistencies documented in Judge Williams' report, and the ones laid out above and the ones in the report show that Duncan is not credible and that he lied about being in imminent danger to get his complaint past the three-strikes bar.

Duncan has filed two documents objecting to Judge Williams' recommendation on the pauper point. He first says that he was in danger when he filed his complaint and Judge Williams' rulings on that point are incorrect, but he makes no effort to address any of the inconsistencies laid out in Judge Williams' report and

recommendation, and as the Court said above, those clearly show that Duncan wasn't in danger when he filed his complaint. Duncan also says that he is in danger now, but "imminent danger" in the pauper sense is evaluated at the time the complaint was filed. *E.g., Heimermann,* **337 F.3d at 782;** *Malik v. McGinnis,* **293 F.3d 559, 562-63 (2d Cir. 2002);** *Abdul-Akbar v. McKelvie,* **239 F.3d 307, 311 (3d Cir. 2001).** His current dangers matter if he files a federal civil rights case about what's happening at his current prison and he files a motion to proceed as a pauper in that case; they have no bearing here. At the end of the day, Duncan's objections concerning pauper revocation are unconvincing, so the Court will adopt Judge Williams' recommendation on that point.

There are a few other matters to attend to—through his responses to the magistrate's report and through other filings, Duncan contests a number of the magistrate's non-pauper rulings. His loudest objection is to the magistrate's denials of his many motions to file amended complaints, but those denials were correct—the joinder rules precluded all of Duncan's efforts to amend. Frequent filers like Duncan should know that the joinder rules stop prisoners from dumping unrelated claims against different defendants into one stewpot of a case, both to prevent the administrative mess that those kinds of cases cause and to make sure that prisoners pay filing fees and run up proper strikes. *Wheeler v. Wexford Health Sources, Inc.,* **689 F.3d 680, 683 (7th Cir. 2012).** Take an example not unlike this case. A prisoner files a 25-page handwritten, single-spaced complaint against 50 defendants, targeting five defendants for engaging in one type of conduct, ten for engaging in another, and so on, all amounting to five discrete events. Without the joinder rules, a prisoner would pay

one fee for a case that was really five, and will incur no strikes for frivolous complaints even if four of the five groups of claims are dismissed at threshold screening. With the joinder rules—and with a healthy dose of skepticism towards conclusory conspiracy allegations used to tie clearly unrelated claims together—the five cases are broken apart, the cases are capable of easy (or at least easier) administration by the courts, and proper fees and strikes are assessed. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Fifty-claim, fifty-defendant complaints have become popular since the Seventh Circuit ruled that one meritorious claim in a sea of frivolousness incurs no strikes, ***Turley v. Gaetz*, 625 F.3d 1005, 1008 (7th Cir. 2010)**, and these types of blunderbuss complaints are a drain on the courts, especially courts filled to the brim with prisons. The joinder rules help fix that problem, and they block Duncan from bringing unrelated claims into this case by way of his motions to amend. Those motions were rightly denied.

      The rest of Duncan's objections don't warrant extended discussion. He claims that the magistrate judge erred by denying his motions for counsel, but those rulings were correct. Based on Duncan's filings to date, he has the ability to litigate his case, at least for purposes of the pauper issue and discovery. He claims that the magistrate judge erred by not compelling the defendants to respond to discovery in his July 1, 2015 order, but at that time, Duncan hadn't filed a motion to compel. He insists that the magistrate judge erred in recommending that his motions for preliminary injunctive relief be denied and in denying past requests for injunctive relief, but the injunctive requests in those motions—like Duncan's efforts to amend his complaint—concerned matters unmoored to the original complaint. Duncan can't show a likelihood of success

on a cause of action that's not before the Court, so the injunctive motions couldn't be granted. Duncan finally insists that the magistrate erred by denying his motion for discovery sanctions, but the magistrate properly ruled that no sanctions were needed because the defendants sent responses and resent them when Duncan claimed he didn't receive them. All in all, Duncan's objections lack merit, and they will be overruled.

Duncan has also filed a number of motions since Judge Williams entered his report and recommendation. All of those motions are similar to his previous ones, and all of them will be denied. Duncan's motion to proceed as a pauper is meritless: the claims of imminent danger in his original complaint aren't credible, so he is subject to the three-strikes barrier. Duncan's new motion for preliminary injunctive relief concerns events outside of the events at issue in his original complaint, and thus fails for the same reason his earlier motions failed. Duncan's motion to stay all proceedings is moot, as the basis for the stay was his pending preliminary injunction request, and that request will be denied. His new motion for counsel must be denied because Duncan's filings show that he can litigate this case, at least through pauper matters and discovery. Finally, his motion to compel discovery is undeveloped and premature— Duncan says he sent discovery to the defendants and they didn't answer, but he hasn't attached that discovery to his motion, the defendants deny receiving it, and Duncan has made no effort to meet and confer with counsel to work out the problem. His reply indicates that he has resubmitted the discovery, so if Duncan pays the fee to proceed with this case, he can move to compel again, presuming the defendants fail to respond.

To sum up, all of Duncan's objections (Docs. 105, 107, 132, 134, & 139) are **OVERRULED**. The Court **ADOPTS** Judge Williams' report and recommendation (Doc. 127) in full, **DENIES** Duncan's pre-report motions for preliminary injuctions (Docs. 108, 109, & 116), and **GRANTS** the defendants' motion to revoke Duncan's pauper status (Doc. 99). Duncan's pauper status is **REVOKED**, and he is ordered to pay the full filing fee for this case by Monday, May 16, 2016 or his case will be dismissed. The Court further **DENIES** Duncan's motion to compel discovery responses without prejudice (Doc. 119), **DENIES** Duncan's recent pauper motion (Doc. 133), **DENIES** Duncan's new motion for an emergency preliminary injunction (Doc. 140), **DENIES** Duncan's motion to stay all proceedings as **MOOT** (Doc. 143), and **DENIES** his recent motion to appoint counsel to assist him in this case without prejudice (Doc. 146).

**IT IS SO ORDERED.**

DATED: April 15, 2016

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**